996 A.2d 893

**Hanna DZIAMKO**

v.

**Taras CHUHAJ.**

**No. 453, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

June 2, 2010.

---

John R. Paliga (Thomas & Libowitz, PA, on the brief), Baltimore, MD, for appellant.

Patricia E. McDonald of Brooklandville, MD, for appellee.

Panel: EYLER, DEBORAH S., MEREDITH, MATRICCIANI, JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Baltimore County, Hanna Dziamko ("Wife"), the appellant, was divorced from Taras Chuhaj ("Husband"), the appellee.[1] The parties reached a settlement agreement as to all custody, support, and property issues ("the Agreement"). The Agreement was placed on the record in open court and incorporated, but not merged, into the judgment of absolute divorce.

This appeal arises from the post-judgment entry of a domestic relations order ("DRO") and a constituted pension order ("CPO") necessary to effectuate the Agreement with respect to Wife's entitlement to a share of Husband's pensions.[2] Husband has moved to dismiss the appeal. Wife opposes that motion and poses two questions for our review,[3] which we have rephrased as:

---

1. We shall refer to the parties as "Husband" and "Wife" for ease of discussion.

2. The order entered by the court was entitled "Order Dividing Military Retirement Benefits." We shall refer to it as a CPO because, pursuant to 10 U.S.C.A. section 1408 (1998, 2009 Supp.), this type of order is the appropriate means of assigning a former spouse an interest in military retirement pay. *See generally, Marquis v. Marquis,* 175 Md.App. 734, 739 n. 1, 931 A.2d 1164 (2007).

3. The questions as posed by Wife are:
 I. Did the Circuit Court err in signing Appellee's proposed Order Dividing Military Retirement Benefits, because such Order does not properly divide Appellee's military retired pay and because it contravenes the express terms of the parties' Agreement, which had been placed on the record and approved by the Circuit Court?
 II. Did the Circuit Court err in signing Appellee's proposed Domestic Relations Order (Fire & Police Employees Retirement System of the City of Baltimore Pension), because such Order does not properly divide Appellee's pension [ ] and because it contravenes the express terms of the parties' Agreement, which had been placed on the record and approved by the Circuit Court?

I. Did the circuit court err in entering the DRO and CPO proposed by Husband because the orders failed to properly calculate Wife's share of the pensions?

II. Did the circuit court err in entering the DRO and CPO proposed by Husband because they did not otherwise comply with the parties' Agreement?

For the reasons to follow, we will deny the motion to dismiss. We answer both questions in the affirmative and, accordingly, shall vacate both orders entered by the circuit court and remand for the entry of new orders consistent with this opinion.

## FACTS AND PROCEEDINGS

The parties married on November 25, 2000. They had one child, Alina, born on March 10, 2002. After more than seven years of marriage, the parties were divorced on April 14, 2008.

Prior to the marriage, in 1988, Husband joined the Maryland (Army) National Guard. He was serving on reserve status when the parties married. For the first four years of the marriage, Husband worked for the City of Baltimore (the "City") as a paramedic in the fire department. He was required to contribute 6% of his salary to the Fire & Police Employees' Retirement System of the City of Baltimore pension system. In November of 2004, he was activated to full time duty in the U.S. Army and has been serving full time since that date. He is on a paid[4] military leave of absence from the City.

Wife attended pharmacy school during the marriage and currently is employed by CVS Pharmacy.

---

4. In an opposition to a motion filed below, Husband made contradictory statements regarding his leave of absence. He "admit[ted]" the allegation contained in Wife's motion that he "continue[d] to receive regular pay as a paramedic from the City" as of February 21, 2008, but later referred to his "unpaid leave of absence." He does not dispute Wife's characterization of his leave of absence as "paid" in his brief on appeal, however.

On October 17, 2006, in the Circuit Court for Baltimore County, Husband filed his complaint for absolute divorce, which he later amended. On December 14, 2006, Wife filed a countercomplaint. The case went to a merits hearing on February 25, 2008. After five days of testimony, the parties entered into the Agreement, thereby resolving all outstanding issues.

On March 5, 2008, the terms of the Agreement were placed on the record in open court. As relevant to the instant appeal, the parties agreed as follows:

[WIFE'S COUNSEL]: With respect to the husband's pension retirement benefits from the fire department, wife has an if-as-when interest as to half of the marital share. Same with respect to husband's military pension, wife has an if-as-[and]-when interest as to half of the marital share. With respect to the military pension, since it is federal in nature, husband agrees to execute whatever authorizations are necessary so that wife can obtain information regarding her interest in that pension and further to authorize the military to make direct payment to wife if she receives any interest in that pension.

After the rest of the Agreement had been placed on the record, the following colloquy occurred:

THE COURT: .... I think both parties should understand that these pension rights are frozen in time based on the length of the marriage. So it's going to be the number of months that you were married—

[HUSBAND]: Yes, sir.

THE COURT:—that will determine the amount of money she receives.

[HUSBAND]: Understood, sir.

THE COURT: So as the pension rights increase, that does not necessarily mean her share is going to increase.

[HUSBAND'S COUNSEL]: Correct, Your Honor.

THE COURT: I'm going to pull a number out of the air. Let's say you were in the service for 20 years and you were

married for four years. She'd be entitled to that one half of that pension that was earned during the four-year period.

* * *

THE COURT: ....But I want you to understand if you're in there 20 or 30 years, the amount she receives is frozen in time as of today.

[HUSBAND]: Understood, sir. I didn't know.

THE COURT: A lot of people get confused, sir.

[HUSBAND]: Understood, sir.

The court issued the judgment of absolute divorce on April 11, 2008, and it was entered in the docket on April 14, 2008. The judgment provided, in pertinent part:

2. That the agreement between the parties, as set forth on the record in open Court, on March 11, 2008,[5] [hereinafter "Agreement"], entered into by the parties, relative to custody, child support, alimony, property rights, counsel fees, court costs, etc., be and the same is hereby approved and made a part of and incorporated in this Judgment of Absolute Divorce, but not merged herein, having the same force and effect as if fully set forth herein. [See attached Reporter's Official Transcript Excerpt of Proceedings.]

* * *

10. That the parties promptly shall submit to this Court one or more Qualified Domestic Relations Order(s) [hereinafter "QDRO(s)"] or Domestic Relations Orders [hereinafter "DRO(s)"], as defined in the Retirement Equity Act of 1984, as from time to time amended, which Orders shall address the retirement benefits of the parties in accordance with the said Agreement.

11. That this Court retains jurisdiction to amend this Judgment of Absolute Divorce, and/or the aforesaid QDRO(s) or DRO(s) for the purpose of maintaining its/their qualifications as a QDRO(s) or DRO(s) under the Retire-

---

**5.** The judgment erroneously states that the Agreement was placed on the record on March *11,* 2008. It actually was placed on the record on March *5,* 2008.

ment Equity Act of 1984, or any other subsequent legislation; and, both parties and the manager/administrator of Plaintiff/Counter–Defendant's retirement plans shall take whatever actions may be necessary to establish or maintain those qualifications, provided that no such amendment shall require the retirement plan to provide any type or form of benefits, or any option not otherwise provided under the plan(s), and further provided that no such amendment or the right of the Court to so amend will invalidate the order as "Qualified" under the Retirement Act or any related Act.

After entry of the divorce judgment, the parties were unable to reach an agreement as to the terms of the DRO and CPO. On March 16, 2009, Wife filed two motions—one for entry of a DRO with respect to Husband's City pension and one for entry of a CPO with respect to his military pension.[6] Attached to each motion was her proposed order, Husband's proposed order, the transcript of the March 5 hearing, and a copy of the divorce judgment. Wife did not request a hearing on her motion.

On March 21, 2009, Husband filed an opposition to Wife's motion with respect to the City pension. On March 31, 2009, he filed an opposition to Wife's motion with respect to the military pension. Attached to each was his proposed order. He did not request a hearing either. As we shall discuss, the parties' proposed orders differed in many respects, most notably in the manner each calculated Wife's share of the pensions.

On April 9, 2009, the circuit court entered the orders as proposed by Husband.[7] The docket entries state "Granted." There was no accompanying memorandum opinion.

---

6. For ease of discussion, we refer to both as pensions. As we discuss *infra*, however, military retired pay differs from a pension in certain respects.

7. The judge who signed the orders was not the same judge who presided over the merits hearing and the eventual settlement agreement proceeding.

Wife noted a timely appeal. We shall include additional facts as pertinent to the issues.

## MOTION TO DISMISS

■ Husband moved to dismiss the appeal, arguing that Wife cannot appeal from a consent order and that she acquiesced in the judgment below by accepting its benefits. Wife responds that she is not appealing from the judgment of absolute divorce, which incorporated the Agreement, but from the terms of the DRO and CPO, entered post-judgment.

■ We shall deny the motion to dismiss. "The right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal." *Rocks v. Brosius*, 241 Md. 612, 630, 217 A.2d 531 (1966). In keeping with this principle, ordinarily, "no appeal will lie from a consent decree." *Mercantile Trust Co. v. Schloss*, 165 Md. 18, 24, 166 A. 599 (1933).

■ In the instant case, Wife is not appealing from a consent decree, as Husband contends. Rather, she is appealing from the entry of orders contemplated by the consent decree. She contends and, as we will discuss, *infra*, we agree, that the orders entered by the circuit court failed to effectuate the Agreement. When the parties consent to certain terms and those terms are not fulfilled by subsequent court orders, an appeal may be heard. *See Smith v. Luber*, 165 Md.App. 458, 468–71, 885 A.2d 894 (2005) (appeal from a consent decree purporting to memorialize the terms of an agreement placed on the record appropriate where the consent decree failed to reflect the parties' agreement).

For the same reason, Husband's acquiescence argument also fails. Wife is not seeking to challenge the judgment of absolute divorce, but to enforce its terms. Thus, the fact that she accepted benefits from the judgment, such as a monetary award, does not affect her right to appeal.

### DISCUSSION

### I.

Wife contends the parties' Agreement that she would be entitled to an "if-as-when interest as to half of the marital share" of Husband's pensions means that her share should be determined using the *Bangs* formula.[8] She argues that the DRO and CPO proposed by Husband and entered by the circuit court erroneously compute her share of the pensions to her detriment. Husband counters that the Agreement did not contemplate use of the *Bangs* formula; he references the trial judge's comments as proof of that fact. He contends that the DRO and CPO entered by the court effectuate the terms of the Agreement and that the orders should be affirmed. We begin by setting forth the relevant terms of the competing orders.

### A. DRO

The DRO entered by the court, as proposed by Husband, provided, in relevant part, that Wife was "assigned" a portion of Husband's pension as follows:

(a) The amount assigned to the Alternate Payee from the Plan shall be 50% (fifty percent) of the marital property portion of the Member's contributions accumulated under the Plan as of April 11, 2008 (the date of the parties' divorce).[9] The marital property portion is a fraction, the numerator of which is the number of months of credited service acquired during the parties' marriage, and the denominator of which is the total number of months of the Member's total credited service in the Plan determined as of April 11, 2008. The parties were married on November 25, 2000, and divorced April 11, 2008. The Alternate Payee shall receive 50% of the aforementioned marital property

---

8. *Bangs v. Bangs*, 59 Md.App. 350, 475 A.2d 1214 (1984).

9. As discussed, *supra*, although the trial judge signed the judgment of absolute divorce on April 11, it was not actually entered until April 14.

portion of the Member's contributions from any payments made from the Plan to the Member. The Alternate Payee's share shall be paid ratably, in accord with the terms and conditions of the Plan, if, as and when payments are made to the Member.

In contrast, the DRO proposed by Wife provided the following means of calculating her share of the City pension:

i. *Alternate Payee's Share.* The Alternate Payee's Share shall be 50% of the marital property portion of the Member's total benefit under the Plan. The marital property portion is a fraction of the Member's total benefit at the Determination Date, the numerator of which is 88 (which represents the total number of months of the parties' marriage during which the Member was a participant in the Plan, not including the number of months of DROP participation), and the denominator of the fraction shall be the total number of months of the Member's participation in the Plan determined at the Member's Determination Date, not including the number of months of DROP participation. The Alternate Payee shall receive 50% of the aforementioned marital property portion of any payments made from the Plan to the Member if, as and when such payments are made. For purposes of this Agreement the Determination Date is the date of the Member's retirement.

## B. CPO

Under Husband's version of the CPO, as adopted by the circuit court, Wife's share of the military pension would be determined as follows:

(a) The amount assigned to the Former Spouse from Member's benefits shall be 50% (fifty percent) of the marital property portion of the Member's benefit accumulated under the Plan as of April 11, 2008 (the date of the parties' divorce). The marital property portion is a fraction, the numerator of which is the number of the military reserve retirement points accumulated by the Member during the parties' marriage, and the denominator of which is the total

number of months of the Member's military reserve retirement points determined as of April 11, 2008. The parties were married on November 25, 2000, and divorced April 11, 2008.

(b) In the event that Member retires from the military as an active duty member, the numerator of the marital fraction shall be the number of months of credited military service (including reserve service) during the parties' marriage through April 11, 2008, and the denominator of the fraction shall be the Member's total number of months of military credited service (including reserve service) through April 11, 2008.

(c) The Former Spouse shall receive 50% of the aforementioned marital property portion of any payments of retired pay made from the military pay center to the Member, if, as and when such payments are made to the Member.

Wife's version calculated her share of the military pension as follows:

B. *Division of Military Retired Pay.* The Former Spouse is awarded a percentage (the "Stated Percentage") of the Member's military retired pay (the "Former Spouse's Share") to be computed by multiplying 50% times the applicable fraction(s) specified below.

(1) For any such military retired pay that is based on the Member's active duty service, the numerator of the fraction shall be the number of months of marriage during the Member's creditable military service (which number is 88 months) and the denominator of which is the Member's total number of months of creditable military service.

(2) For any such military retired pay that is based on the Member's service for the Reserves, the numerator of the fraction shall be the number of reserve retirement points earned by the Member during the parties' marriage (which number is _____ points) and the denominator of which is the Member's total number of reserve retirement points earned.

## C. Bangs Formula

In *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981), the Court of Appeals first enunciated the rule that a pension is marital property to the extent that it accrues during the marriage. It recognized, however, the difficulties in valuing this particular marital asset:

> "[t]he problem of valuing prospective benefits under a pension plan is frequently exacerbated by the fact that unmatured rights may be terminated by death, discharge, or other contingencies. Valuation is further complicated by the dual nature of most pension plans. If the employee continues to work until retirement, the payments to the employee, to the extent derived from employer's contributions, are in the nature of deferred compensation. If, however, the employee terminates work before retirement age, the usual plan provides at least for the return of employee contributions." [ (citations omitted).]

*Id.* at 129, 437 A.2d 883 (quoting *Bloomer v. Bloomer*, 84 Wis.2d 124, 267 N.W.2d 235, 238 (1978)) (alterations in *Deering* ).

The Court suggested three possible methods of valuing pension benefits at the time of divorce. First, a trial court could calculate the value of the member's contributions to the pension during the marriage, plus interest. Second, the court could attempt to compute the present value of the pension when it vests.[10] Third, the court could " 'determine a fixed percentage for [the non-member] of any future payments [the member] receives under the plan, payable to [the non-member] as, if, and when paid to [the member].' " *Id.* (quoting *Bloomer, supra*, 267 N.W.2d at 241).

In *Bangs, supra*, this Court approved the application of the third method to calculate the marital portion of a pension

---

10. This method involves " 'considerable uncertainty' " and can be " 'speculative,' " as " 'the benefits payable in the future would have to be discounted for interest in the future, for mortality ... and for vesting.' " *Id.* at 130, 437 A.2d 883 (quoting *Bloomer, supra*, 267 N.W.2d at 241).

earned both during and outside of a marriage.[11] 59 Md.App. 350, 475 A.2d 1214. Under that formula, the marital portion (sometimes called the marital share) is "a fraction of which the number of years and months of the marriage [ ] is the numerator and the total number of years and months of employment credited toward retirement is the denominator[.]" *Id.* at 356, 475 A.2d 1214. The non-member spouse's share of the martial portion of the pension is determined by applying an agreed-upon fixed percentage to it. That fixed percentage then is applied to any future payments received under the pension plan. For example, if the parties were married 100 months during which the pension were accruing, and the pension accrued for a total of 1,000 months (from member's employment to retirement), the marital portion of the pension would be $\frac{1}{10}$, or 10%. If the pension payments were to be divided equally (by court decision or agreement), the non-member's share of each payment, *if* paid to the member, *as* paid to the member, and *when* paid to the member, would be $\frac{1}{2} \times \frac{1}{10} = \frac{1}{20}$, or 5%.[12] This "if, as, and when" method of calculating the marital portion of a pension has since been codified as the default method in Maryland. *See* Md.Code (2006 Repl. Vol., 2009 Supp.) § 8–204(b) of the Family Law Article ("FL").[13]

Judge Moylan, writing for this Court in *Heger v. Heger*, 184 Md.App. 83, 107, 964 A.2d 258 (2009), revisited *Bangs*, noting that "[i]n determining the marital contribution and the non-

---

**11.** If the pension were earned entirely during the marriage, the marital portion would, of course, be 100%.

**12.** The court by decision or the parties by agreement could adopt an unequal division of the marital portion of the pension. Using the same example, if by order or agreement, the non-member's share was to be one-third, then the non-member would receive $3\frac{1}{3}\%$ of each payment if, as, and when received by the member.

**13.** FL Section 8–204(b)(1) provides that "[t]he court need not determine the value of a pension, retirement, profit sharing, or deferred compensation plan, unless a party has given notice in accordance with paragraph (2) of this subsection that the party objects to a distribution of retirement benefits on an 'if, as, and when' basis."

marital contribution toward the growth of a pension, the use of the so-called *Bangs* formula calls for cautious application." He emphasized that *Bangs* was concerned merely with calculating the marital portion of a pension and that the formula applicable to the facts of that case would not necessarily capture the appropriate share in every case.[14] Rather, this Court should focus on the underlying principle, implicit in *Bangs*, that the marital portion is the percentage of the pension accrued during the marriage. That is, the numerator must reflect "Years and months of marriage **IN WHICH THE PENSION CONTINUES TO ACCRUE AND GROW.**" *Id.* at 108, 964 A.2d 258 (emphasis in *Heger*).

### D. Analysis

■■ With this background in mind, we turn to the Agreement and the orders attempting to effectuate its terms. The parties agreed that Wife was entitled to an "if-as-when interest as to half of the marital share" of both pensions, *i.e.*, that the marital portion of each pension would be paid one-half to Wife if, as, and when the pension payments were paid to Husband. As is clear from our discussion above, "if, as and when" has a specific meaning in Maryland with respect to division of pensions. Wife is correct that this phrase necessarily connotes application of the *Bangs* formula, as clarified in *Heger*, among other cases.

■ Although Husband seems to contend in his brief that the trial judge's comments on March 5, 2008, concerning the Agreement somehow altered its terms, at oral argument his counsel candidly agreed that the judge's words could not change the parties' agreement. In our view, the judge, in stating that "these pension rights are frozen in time based on the length of the marriage," merely was explaining that the numerator in the *Bangs* equation was "frozen." This is a correct statement of the law. In any event, the terms of the

---

**14.** This is so because in *Bangs*, the numerator was the "number of years and months of the marriage." If a pension did not accrue throughout the entire marriage, however, this formulation would be incorrect.

Agreement are those set forth by the parties, as read into the record by Wife's counsel. *See Long v. State,* 371 Md. 72, 83–84, 807 A.2d 1 (2002) ("It is the parties' agreement that defines the scope of the [consent] decree.") Husband's counsel was given an opportunity to add to or dispute any of its terms. He did not do so.

The terms of the DRO and the CPO, as adopted by the circuit court, do not properly apply the *Bangs* formula. We begin with the DRO. The City Plan is a defined benefit plan to which Husband contributed at the rate of 6% of his regular salary. As the name suggests, under this type of plan, the benefit to the employee is a defined amount calculated based on a formula set forth under the plan, not based on a return on investment.[15] *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 439, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Under the City Plan, Husband's salary, years of service, and total contributions to the plan all will factor into the amount of his monthly benefit at retirement. Therefore, the exact amount of the monthly benefit is not determinable until he retires.

The DRO states that Wife's share is 50% of the "Member's contribution accumulated under the Plan as of April 11, 2008." Language of this sort, defining the marital portion of the pension by reference to contributions made, instead of benefits received, is inconsistent with an "if, as, and when" share agreement, and therefore is in error.[16] The

---

**15.** In contrast, a defined contribution plan, like a 401(k), is an individual account that is portable. The employee contributes pre-tax dollars to the plan (often with the employer matching) at a rate of his or her choice, with certain limitations. Upon retirement, the " 'employee receives whatever level of benefits the amount contributed on his behalf will provide.' " *Hughes Aircraft Co., supra,* 525 U.S. at 439, 119 S.Ct. 755 (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 364 n. 5, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)).

**16.** While the City DRO as proposed by Husband and issued by the court uses language suggesting that the contributions are being valued, it also sets forth a fraction to be used in calculating Wife's share of payments made on the pension. It thus conflates the concept of a defined contribution plan (such as a 401K), with a defined benefit plan (such as a government pension that pays out a monthly benefit upon retirement).

parties agreed that Wife would be entitled to a one-half share of the marital portion of the City pension on an if, as, and when basis; accordingly, her share is a percentage of the martial share of the *benefit* paid to Husband in this defined benefit pension plan, not a percentage of his *contributions* to the plan over the course of the marriage. As explained above, in a defined benefit plan, Husband's contributions to the plan during the marriage cannot be equated to the value of the pension benefit that accrued during the marriage.

■ Second, the fraction Husband uses to determine the marital portion of the pension does not properly capture the marital portion. The numerator of Husband's fraction is "the number of months of credited service acquired during the parties' marriage." This is a correct formulation. Husband was working for the City when the parties married and was employed there full time for four years before beginning his military leave of absence. It is not clear how many months of his leave of absence will be credited to the Plan. As emphasized in *Heger, supra*, the marital portion of the City Plan must be based on the number of months the pension was accruing during the marriage.

The denominator used by Husband "is the total number of months of the Member's total credited service in the Plan determined as of April 11, 2008." Thus, his fraction is composed as follows: (credited months during the marriage)/(credited months before and during the marriage). This is incorrect. Under *Bangs, supra*, and as reflected in the

---

Those plans are inherently different and cannot be lumped together in a single formula. At oral argument, counsel for Husband went so far as to say that the fraction for determining Wife's interest in the City pension should be the number of months of marriage during which the pension was earned over the monetary amount paid into the pension over the period of the marriage. A fraction composed of a numerator and denominator that are completely different variables is unworkable. *See Heger, supra,* 184 Md.App. at 108–09, 964 A.2d 258 ("Both the numerator and the denominator, moreover, must compute similar units of measurement, lest the so-called fraction be meaningless gibberish."). Husband's counsel later said in oral argument that no fraction should be used at all.

DRO proposed by Wife, the denominator should be the total number of months during which the pension accrues, from employment to retirement. This number, of course, will not be determinable until Husband retires.

Husband's proposed fraction actually results in Wife's receiving an inflated payment. We demonstrate by example. If Husband were employed by the City for five years (60 months) before the marriage, seven years (84 months) during the marriage, and another five years (60 months) after the marriage and until retirement, for a total of 17 years (204 months), assuming that all of those months were credited to the Plan, under his formula, the marital portion of the pension would be 84/144, or 58.33%. Under the parties' 50% division agreement, Wife then would be entitled to one-half of that, *i.e.*, *29.16% of each pension payment, if, as, and when received.* Using the denominator proposed by Wife, however, which is all of the years during which the pension accrued (204 months), her share would be 50% of 84/204, or *20.58% of each pension payment, if, as, and when received.* It is the latter formulation, which is more beneficial to Husband, that the Agreement required.

■■■ We now turn to the CPO. Military retired pay is a federal entitlement that, much like a pension, provides a monthly annuity for life upon retirement from the armed forces. Military retired pay while on active status is calculated based on the number of months of service. In contrast, credit for service while on inactive duty in the National Guard is calculated based on a point system.[17]

---

**17.** Husband states that weekend drills are allotted 4 points, while the annual two-week training session is allotted 14 points. Thirty points is the equivalent of one month of service and 360 points is equated to one year of service. He earned 62 points per year from 1988 until 2004 when he was called up to active duty. This amount consists of one weekend drill per month and one two-week training per year. Thus, he would have earned 248 points in the first four years of the marriage or 8.26 months (.688 of a year).

As with the DRO, the CPO proposed by Husband and adopted by the circuit court fails to effectuate the Agreement in that it does not formulate a fraction consistent with the *Bangs* formula. First, Husband characterizes the marital share of the pension as "50% (fifty percent) of the marital property portion of the Member's benefit *accumulated under the Plan as of April 11, 2008* (the date of the parties' divorce)" (emphasis added). While the fractional formulation that follows does not limit Wife's share to a valuation of the pension as of the date of the divorce, to the extent Husband intends it to, this is not in keeping with the Agreement and is in error for the same reasons already discussed with respect to the DRO.

If Husband retires on reserve status,[18] the numerator is "the number of military reserve retirement points accumulated by the Member during the parties' marriage." The parties are in agreement as to this figure and we agree that it is accurate.[19] *See Woodson v. Saldana,* 165 Md.App. 480, 485–491, 885 A.2d 907 (2005) (discussing calculation of the marital portion of military reserve retirement benefits). The denominator, however, is in dispute. Husband defines it as "the total number of months the Member's military reserve retirement points determined as of April 11, 2008." Wife defines its as "the Member's total number of reserve retirement points earned." Again, we agree that Wife's denominator is the correct formulation and that, as with the DRO, Husband's

---

After being called up to active duty, he earned an additional 41 months of credit, for a total of 49.26 of credited months of service during the marriage.

**18.** Both parties compute Wife's share differently based on whether Husband retires from the military while on active duty (his current status) or while on inactive status as a member of the National Guard. We will assume that this is the appropriate method of computing his military retired pay.

**19.** Wife's phrasing differs only slightly: "the number of reserve retirement points earned by the Member during the parties' marriage (which number is ___ points)[.]"

version actually inflates Wife's share of the military retired pay.

If Husband receives military retired pay based on active duty, under his version the numerator of the fraction is "the number of months of credited military service (including reserve service) during the parties' marriage through April 11, 2008[.]" Wife's proposed numerator differs slightly: "the number of months of marriage during the Member's creditable military service (which number is 88 months)[.]" We agree with Husband that the number of months should remain undefined until such time as he retires as it is not entirely clear how many months of credited service he will receive for the first four years of the marriage while he was on inactive status.

As to the denominator, Husband defines it as "the Member's total number of months of military credited service (including reserve service) through April 11, 2008," while Wife defines it as "the Member's total number of months of creditable military service." Again, Wife's formulation is the correct one.

## II.

 Wife asks this Court to vacate the orders as entered and remand "with instructions to enter the Domestic Relations Orders drafted by [her]." The orders as proposed by Wife, however, also include language related to survivor benefits, direct payment of benefits from the military pension, and other boilerplate language that was in dispute below and is challenged by Husband on appeal.

First, under the DRO and CPO proposed by Wife, Husband would be ordered to designate Wife, as trustee for the couple's minor child, to receive any survivor benefit. Wife argued below that the survivor benefit was indistinguishable from the pension rights and, accordingly, when the parties agreed that she was entitled to half of the marital portion of the pensions, they also agreed that she was entitled to a survivor benefit under the pensions. During negotiations as to the form of the

DRO and CPO, however, Wife offered to allow the parties' minor child to be named as the recipient of the benefit as a compromise position. Husband refused to agree to any order granting survivor benefits.

 We agree with Husband that, under Maryland law, a survivor benefit is separate and distinct from the pension itself. *See Potts v. Potts,* 142 Md.App. 448, 466, 790 A.2d 703 (2002) ("[A]lthough survivor benefits are like a pension, they have been treated as marital property in their own right."). Had the parties not reached the Agreement, the burden would have been on Wife "to expressly identify and value the survivor benefits separately from the pension payments." *Id.* at 468, 790 A.2d 703. It follows that the parties would have had to expressly agree that Wife (or the parties' minor child) would be designated as the beneficiary under either pension. The Agreement that in fact was reached makes no mention of survivor benefits and, accordingly, the language in the DRO and CPO as proposed by Wife with respect to this right expands upon what the parties actually agreed to.

 The second issue involves the manner in which Wife's share of Husband's military retired pay would be distributed. Under the express terms of the Agreement, Husband promised "to execute whatever authorizations are necessary so that wife can obtain information regarding her interest in that pension and *further to authorize the military to make direct payment to wife if she receives any interest in that pension.*" (Emphasis added.) After the entry of the judgment of absolute divorce, however, it became apparent that "direct payment" of Husband's military pension will not be possible because the military only will authorize direct payment to a former spouse if the marriage lasted at least ten years (in addition to other requirements). *See* 10 U.S.C.A. § 1408(d)(2).[20] The parties were married only seven years.

---

20. Section 1408(d)(2) provides:
 If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10

We agree with Husband that, despite the parties' agreement to the contrary, direct payment of his military pension is not possible under federal law and, accordingly, cannot be part of the order entered by the circuit court. *See Janusz v. Gilliam,* 404 Md. 524, 536–37, 947 A.2d 560 (2008) (mutual mistake of law with regard to aspects of a divorce settlement agreement not grounds for rescission of agreement.) The order must comply with the law and, on remand, the court must enter an order in conformity with the law that provides some method of payment other than direct payment.[21]

Next, Wife's proposed orders included certain language protecting her in the event Husband "circumvent[s] the Agreement by applying for other military benefits in lieu of his retirement benefits." She argues in her reply brief that, because the parties agreed to share Husband's pension benefits, "[i]f the benefit is ultimately paid in some form that is in lieu of such payments," this benefit also must be divided based on her fractional share. Husband opposes inclusion of this language because the parties did not expressly provide for it in the Agreement.

The Agreement, by its terms, grants Wife an "if-as-when interest as to half of the marital share" of Husband's military pension. This Court held in *Allen v. Allen,* 178 Md.App. 145, 155, 941 A.2d 510 (2008), that a

> pensioned party may not hinder the ability of the party's [former] spouse to receive the payment she has bargained

---

years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay, payments may not be made under this section to the extent that they include an amount resulting from the treatment by the court under subsection (c) of disposable retired pay of the member as property of the member or property of the member and his spouse.

21. Wife's proposed order states that payments should be made to her "directly by the Member," *i.e.,* Husband. It also states, however, that "[t]he Member shall instruct the DFAS to make payment of Former Spouse's Share by allotment payment[.]" She argues on appeal that she must be paid directly by the military.

for, by voluntarily rejecting, waiving, or terminating pension benefits when they have entered into an agreement which provides for the other party to receive a percentage of pension benefits, on a periodic basis, when they become payable[.]

To the extent that the boilerplate language utilized in the CPO in the instant case merely effectuates the holding in *Allen,* it does not run afoul of the parties' Agreement. Accordingly, on remand, the CPO properly may include standard language protecting Wife's rights to receive a share of any alternative forms of compensation elected by Husband in lieu of his military retired pay.

Lastly, the Agreement proposed by Wife contained certain boilerplate language related to her right to obtain information from the plan administrators and to allow further modification of the DRO and CPO. Husband contends that these provisions "could have dramatic adverse consequences" for him and that they "expand" Wife's benefits beyond the scope of the Agreement. We are not in a position to determine whether the provisions challenged by Husband are required by the City Plan administrators or are otherwise required by federal law with respect to the military retired pay. On remand, if the parties are unable to reach an agreement as to the content and form of the orders, the circuit court should conduct further proceedings to resolve these issues and enter orders in conformity with this opinion.

**ORDERS VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.**