*Kim Dixon Smith v. Kevin Jay Smith*, No. 1263, September Term 2023.
Opinion by Getty, J.

**DIVORCE - JUDGMENT- AMENDMENT OR MODIFICATION**

A trial court has broad discretion to modify or revise a final judgment upon a motion of any party filed within thirty days of an entry of judgment. Maryland Rule 2-535(a). After thirty days has passed, the trial court may exercise revisory power only in the case of fraud, mistake, or irregularity. Maryland Rule 2-535(b). Fraud, mistake, or irregularity sufficient for a trial court to revise a constituted pension order must be established by clear and convincing evidence. Maryland courts have narrowly defined and strictly interpreted the terms fraud, mistake, and irregularity, in order to ensure the finality of judgments. The trial court erred by modifying the fraction used to compute the marital portion of the retired pay award because there was no finding of fraud, mistake, or irregularity in the 1999 constituted pension order.

**DIVORCE – MILITARY RETIREMENT – PENSION OR DISABILITY RIGHTS**

Under state law, an interest in a military retirement plan is marital property subject to equitable distribution upon divorce to the extent it was earned during the marriage. The retired pay award is the former spouse's marital share of the servicemember's retired pay, and this sum is determined with guidance from the Uniformed Services Former Spouses' Protection Act and the subsequent regulations promulgated by the Department of Defense.

**DIVORCE – MILITARY RETIRMENT – CALCULATION OF PENSION OR DISABILITY RIGHTS**

The method for calculating a military retired pay award is dependent upon whether the servicemember served on active duty or in the reserves. An active duty servicemember's retired pay is calculated using months, whereas a reservist's retired pay is measured using the points method. However, if the constituted pension order is a final judgment and uses the months system, a comparable figure of months must be used to calculate the *Bangs* formula for spousal share.

**DIVORCE – MILITARY RETIRMENT – DISTRIBUTION OF PENSION OR DISABILITY RIGHTS**

The Defense Finance Accounting Service makes direct payments to former spouses. However, the military plan administrator will only make direct payments to former spouses if the marriage lasted at least ten years, and in this case, the parties were only married for nine years and five months. The trial court shall ensure the proper distribution of the retired pay award if, for any reason, the plan administrator does not provide for direct payments to the former spouse.

Circuit Court for Baltimore County
Case No. 03-C-97-009400

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1263

September Term, 2023

_____

KIM DIXON SMITH

v.

KEVIN JAY SMITH

_____

Albright,
Kehoe,
Getty, Joseph M.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Getty, J.

_____

Filed: June 6, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In the United States, an individual who serves in the military is entitled to participate in a federal retirement program. Eligibility for a military retirement plan is available to both active duty (full-time) and reserve (part-time) military personnel. The military retirement program is governed by federal law and administered by the United States Department of Defense ("DoD") through the Defense Finance Accounting Service ("DFAS"). DFAS relies on orders from state courts for the proper calculation and distribution of marital portions of retired pay.

This appeal concerns a dispute between a divorced couple on the proper calculation and distribution of, and subsequent payment mechanism for, the former spouse's share of the servicemember's military retired pay and whether modification of their constituted pension order ("CPO") was necessary to ensure equitable and just allocation to both parties.[1] Kim Dixon Smith, Appellant, and Kevin Jay Smith, Appellee, were granted a judgment of absolute divorce in the Circuit Court for Baltimore County ("trial court") in July 1999 after nine years and five months of marriage.

---

[1] While Mr. Smith and Ms. Smith use the term "pension" in their briefs and during oral argument, the DoD regulations note that this retirement program is not a traditional employee pension where the servicemember contributes part of their pay to a pension fund and the pension accrues over time. Instead of "pension," the military regulations use the terminology "retired pay" defined by regulation as "a statutory entitlement computed at the time the member retires . . . based on the member's rank and total years of service at the time of retirement, or member's high-3 of total years of service." In the 1999 CPO issued by the trial court, reference is made to Mr. Smith's retired pay as "military benefits." When referencing the Smiths' CPO, we will use that term, but, throughout the opinion, we will use the Department of Defense's terminology of "retired pay" instead of referring to this benefit as a pension. Department of Defense, DoD 7000.14-R, Financial Management Regulation 6.14 [hereinafter DoD FMR, Vol. 7B. Ch. 29], Vol. 7B, Ch. 29 (Feb. 2023).

The primary issue in this case is determining the proper calculation of the retired pay award when Mr. Smith served on both active and reserve duty.[2] In August 1999, the trial court entered a CPO that ordered the terms for the calculation of Ms. Smith's retired pay award using months as the numerator in the *Bangs* formula. However, Mr. Smith's retired pay was calculated by DFAS using the points system because he served both on active duty and as a reservist for about thirty-nine years encompassing time before, during, and after his marriage to Ms. Smith. Thus, the trial court modified the CPO so that comparable values under the points system were used in the *Bangs* formula.

An additional complicating factor is that federal law provides that DFAS only administers the distribution of retired pay directly to former spouses of servicemembers if the marriage was ten years or longer. In this case, the divorce was granted after nine years and five months of marriage and, therefore, a plan administrator at DFAS is not able to issue direct payments to Ms. Smith. Therefore, the method for distribution of the spousal share of retired pay was also before the trial court.

In this appeal, Ms. Smith presents three issues concerning the trial court's modification of the CPO. For clarity,[3] we have rephrased those issues as the following question presented:

---

[2] According to DoD FMR 2.17, "[r]etired pay award is a portion of a member's disposable military retired pay awarded to a former spouse or current spouse by a court of competent jurisdiction as a property division." Vol. 7B, Ch. 29.

[3] Ms. Smith listed the issues as follows:
1. Did the Circuit Court err by ignoring the plain, unambiguous text of the Constituted Pension Order and modifying the terms that the parties had agreed on, given that the parties negotiated to use the months system and use a numerator of 113 months?

Did the Circuit Court err by modifying the terms of the CPO, which stipulated using the *Bangs* formula based upon the months system with a numerator of 113 months and instead substituting the points system even though the CPO is a final judgment entered in 1999?

For the reasons explained below, we conclude that the finality of judgments under Maryland precedent prevail and that the trial court erred when it modified the terms of the 1999 CPO to the points system used by the military for reserve personnel. Accordingly, we reverse the judgment of the trial court and remand the case for additional findings consistent with this opinion.

## I.    BACKGROUND

In August 2020, Ms. Smith filed a motion in the Circuit Court for Baltimore County to enforce the judgment of absolute divorce that was issued by the court in 1999. Specifically, the motion requested that the trial court order Mr. Smith to pay Ms. Smith her retired pay award as provided for in the 1999 CPO. Based upon knowledge obtained through a Freedom of Information Act ("FOIA") request, Ms. Smith discovered that Mr. Smith had started to draw upon his military retirement plan in April 2020.

Mr. and Ms. Smith were married in 1990. Prior to their marriage, Mr. Smith served on active duty for six and one-half years. His total military career included active and reserve duty beginning in 1978 and ending in 2018 with a one-year break from 1985 to 1986. The Smiths divorced in 1999 after nine years and five months of marriage. During

---

2. Did the Circuit Court err in overriding the *Bangs* formula that was also written into the Judgment of Absolute Divorce?
3. Did the Circuit Court err by modifying a final judgment based on an issue that Appellee should have raised 22 years ago?

the entirety of their marriage and for the remainder of his military service after their divorce, Mr. Smith served as a reservist.

A hearing was held by the trial court on April 9, 2021, and an order was issued to resolve enforcement of the survivor benefit provisions of the CPO. However, the proper calculation and distribution of the retired pay award remained unaddressed. Ms. Smith then filed a petition for contempt in December 2021 against Mr. Smith for his continued failure to pay Ms. Smith the spousal share of the retired pay award. The trial court held three hearings on the petition for contempt on July 22 and December 1, 2022, and on June 9, 2023. To ascertain Ms. Smith's proper retired pay award at the June 9th hearing, the trial court heard testimony and received evidence about the 1999 judgment of absolute divorce and CPO.

The CPO specified that Mr. Smith was to pay one half of "that portion of the Defendant's retirement/pension/deferred compensation benefits that accrued from the date of the parties' marriage to the date of this judgment." The formula for determining the former spouse's share of Mr. Smith's military benefits as provided in the CPO followed the *Bangs* formula as established in *Bangs v. Bangs*, 59 Md. App. 350, 367-68 (1984), and specified as follows:[4]

> The Former Spouse shall receive fifty percent (50%) of the Member's military retirement benefits as spousal support multiplied by a fraction, the numerator of which shall be the number of months of the Member's

---

[4] Because there is no dispute that the military retirement benefits at issue here are marital property, and not alimony, they are not modifiable under Section 8-103(b) of the Family Law Article of the Maryland Code, either. *See Collins v. Collins*, 144 Md. App. 395, 422 (2002) (emphasizing that pension, or rights to a pension, including military pensions, are marital property.)

creditable service during the parties' marriage (which number is 113 months) and the denominator of which is the total number of months of the Member's creditable service for retirement purposes… [5]

At this hearing, Mr. and Ms. Smith set out different interpretations of the CPO formula language and thus different methods for calculating Ms. Smith's retired pay award. Ms. Smith entered into evidence the data that she had received from DFAS from her FOIA request. She proffered that Mr. Smith earned a total of 5,774 points throughout his career and that, under the language of the CPO, these points should be converted to an equivalent number of months. The DFAS provided a conversion as part of the FOIA request that 5,774 points is equivalent to 16.04 years or 192.48 months of creditable service. Ms. Smith asserted the 192.48 months should be the denominator for the 113 months numerator, as stated in the 1999 CPO, and accordingly, the *Bangs* formula would be 113 months divided by 192.48 months; then times .5, which equals 29.35% of Mr. Smith's retired pay.

Mr. Smith proposed an alternative method for distributing his retired pay. He argued the formula award should be calculated totally based upon the points system because DFAS uses points for calculating retired pay for reservists. During the hearing,

---

[5] While *Bangs* is a Maryland case, the DoD regulations provide a similar framework:

A formula award computes a former spouse's property interest in a military member's retired pay based on the relationship of a period of time (i.e., the length of the parties' marriage through the date of separation or total marriage through the date of divorce) during the member's creditable service (numerator) to the member's total service that is creditable toward retirement (denominator). A formula award is stated as a marital fraction in which the numerator and denominator are multiplied by a given percentage.

DoD FMR 2.11, Vol. 7B., Ch. 29.

counsel for Mr. Smith alleged that total points earned during the marriage was 789 points as a substitute for the 113 months in the CPO. Therefore, the formula proposed by Mr. Smith was 789 points divided by 5,774; then multiplied by .5 which equals 6.84% of Mr. Smith's retired pay.[6]

During this hearing, the trial court focused on the language from the CPO relating to creditable service: "the denominator of [the formula award] is the total number of months of the member's *creditable service* for retirement purposes." The trial court determined because DFAS used the points system to accurately reflect the time a reservist participated in military activities that the numerator of the formula award should be the number of points of creditable service earned during the Smiths' marriage and not the total months. Thus, the trial court found the figure of 113 months, specified as the numerator in the CPO, to be incorrect and substituted the figure proffered by Mr. Smith's counsel of 789 points.[7] In an order, the trial court modified the CPO and awarded 6.84% of Mr. Smith's disposable military retired pay to Ms. Smith.

Ms. Smith filed a motion to alter or amend the judgment, which was denied by the trial court. She then noted a timely appeal to this Court.

---

[6] The formula of 789 points divided by 5,774 points; then multiplied by .5 equals .06832. Typically, this number when converted to a percentage would be rounded to 6.83 percent. However, at the hearing, the trial court rounded this figure to 6.84 percent.

[7] We note that while this figure was proffered by counsel, there was no documentation from DFAS entered into evidence to confirm that 789 points was the correct figure for reserve points earned during the marriage.

6

Also at issue in this appeal, but not addressed by the trial court's order, is the method of distribution for the former spouse's share of the retired pay award. As discussed in the analysis, DFAS declined to distribute the retired pay directly to Ms. Smith because under the federal statute, DFAS does not distribute payments directly to former spouses of marriages that, like in this case, lasted less than ten years.[8]

## II. STANDARD OF REVIEW

Our Court has "appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court[.]" Md. Code Ann., Cts. & Jud. Proc. § 12-308. In an action tried without a jury, this Court reviews the case on both the law and the evidence and may set aside the judgment of the trial court on the evidence where the finding is clearly erroneous. Maryland Rule 8-131(c). The trial court's interpretation and application of the law are reviewed as to whether the court's conclusions are "legally correct." *Schisler v. State*, 394 Md. 519, 535 (2006). A trial court "has broad discretion 'when determining the proper allocation of retirement benefits between the parties.'" *Bangs*, 59 Md. App. at 367 (citing *Deering v. Deering*, 292 Md. 115, 130 (1981)). The decision of the trial court is subject to reversal where its discretion has been abused. *North v. North*, 102 Md. App. 1, 13-14 (1994).

Review of the modification of a final judgment is subject to the provisions of Maryland Rule 2-535. *Pelletier v. Burson*, 213 Md. App. 284, 290 (2013). In pertinent

---

[8] DoD FMR 6.4 states that a DFAS designated agent must have jurisdiction over the retired pay award, and 6.4.2 requires the parties to have been married for at least ten years. Vol. 7B, Ch. 29.

part, Maryland Rule 2–535(a) provides: "On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment[.]" *Id.* at 290. Further, Maryland Rule 2-535(b) provides that "[o]n motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity." Maryland cases interpreting the revisory power under this rule have stated that "[t]he existence of fraud, mistake, or irregularity must be shown by 'clear and convincing evidence.'" *Davis v. Att'y. Gen.*, 187 Md. App. 110, 123 (2009) (quoting *Das v. Das*, 133 Md. App. 1, 18 (2000)). In addition, "Maryland courts 'have narrowly defined and strictly applied the terms fraud, mistake, [and] irregularity,' in order to ensure finality of judgments." *Thacker v. Hale*, 146 Md. App. 203, 217 (2002) (citing *Platt v. Platt*, 302 Md. 9, 13 (1984)).

## III. DISCUSSION

### A. Issues and the Parties' Contentions

To summarize the positions of the parties, there are three fundamental issues to consider in the interpretation and implementation of the Smiths' CPO.

First, the CPO was enrolled by the circuit court in 1999, twenty-two years prior to this court proceeding concerning the enforcement of the judgment. Therefore, whether the CPO could even be modified for equitable reasons is a question based upon Maryland precedent on the finality of judgments.

Second, Mr. Smith served as both an active duty member of the United States military and as a reservist. Due to the nature of Mr. Smith's service, Ms. Smith's retired

8

pay award was calculated by the DoD using the military points system, which contradicts the unit of measurement as written into the CPO. The CPO specifically provided 113 months as the numerator of the fraction to calculate Ms. Smith's retired pay award, but Mr. Smith was in the reserves during the Smiths' entire marriage, during which his creditable service was calculated in points instead of months. The question posed by the parties before the trial court was how to reconcile the calculation of the spousal share between the points and months systems in a fair and equitable manner.

Third, Mr. and Ms. Smith were only married for nine years and five months, which under the Uniformed Services Former Spouses' Protection Act ("USFSPA") prohibits DFAS from directly distributing the retired pay to a former spouse. As a result, the trial court is endowed with the discretion to craft a payment schedule for the division of this marital asset.

Ms. Smith alleges the trial court erred by modifying unambiguous language in the CPO and by adopting Mr. Smith's calculation of the spousal share of his retired pay based upon the points system. Ms. Smith emphasized that she and Mr. Smith were both represented by counsel when they agreed to the CPO in 1999. Therefore, both parties were assumed to be aware of the law, specifically how Mr. Smith, as a reservist, earned points for his creditable service, and with that knowledge, agreed to the 113 months numerator as entered in the CPO. Therefore, Ms. Smith argues that the trial court erred in changing the *Bangs* formula as specified in the CPO because these terms were written into a judgment subject to change only if there was fraud, mistake, or irregularity. Based upon the information that she received from DFAS through her FOIA request, Ms. Smith proffers

9

that the 5,774 points should be converted by a DFAS formula for years of service. This formula is the number of points divided by 360 days (5,774 divided by 360), which equals 16.04 years. For the equivalent number of months for the *Bangs* formula, Ms. Smith would multiply by 12 months per year (16.04 years multiplied by 12) which equals 192.48 months. Thus, under Ms. Smith's calculation the *Bangs* formula calculation under the 1999 CPO would be: 113 months divided by 192.48 months; then multiplied by .5, which equals 29.35% of Mr. Smith's retired pay.

Mr. Smith argues that the trial court correctly focused on the language of the judgment and the words "creditable service" in the CPO and thus correctly modified the formula to the points system. Further, he argues that using the months system with the 113 months as the numerator as specified in the CPO would cause an inequitable result. To interpret the word "creditable" in section 6B of the CPO, Mr. Smith asserts the numerator of the formula award should be 789 points, which is the number of retirement points that he earned during his marriage to Ms. Smith proffered by his counsel at the hearing. Provided the denominator is 5,774 points, the total number of retirement points documented by DFAS, Mr. Smith alleges the proper formula award is 789 points divided by 5,774 points; then multiplied by .5. Therefore, under this calculation, Ms. Smith should receive 6.84% of Mr. Smith's retired pay.

### B. Finality of Judgments in Maryland Jurisprudence

Ms. Smith avers that the trial court is procedurally barred from modifying the CPO because it is a final judgment, and Mr. Smith's delayed attempt at modification is prohibited by Maryland Rule 2-535(a)-(b). The 1999 judgment of divorce and the CPO

10

were clearly final judgments because they (1) were "intended by the court as an unqualified, final disposition of the matter in controversy," (2) "complete[d] the adjudication of all claims against all parties," and (3) the clerk "ma[d]e a proper record of it in accordance with Md. Rule 2-601." *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989).

Final judgments impose consequences. Litigants cannot relitigate an issue after a final judgment, absent a timely appeal. Generally, a party may file a motion within the thirty days following a judgment, and the court, if it decides to, may exercise its revisory power. Maryland Rule 2-535(a). The only exception to the finality of judgments is Maryland Rule 2-535(b) that provides:

> (b) **Fraud, Mistake, Irregularity**. On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

Ms. Smith asserts *Leadroot v. Leadroot*, 147 Md. App. 672, 679-80 (2002), as support for her position that Maryland Rule 2-535(b) does not apply here. In *Leadroot*, Ms. Leadroot claimed that the trial court fundamentally modified the fractional equation prescribing the marital portion as written into their CPO instead of clarifying it, which was a violation of Maryland Rule 2-535. *Id.* at 678-79. Mr. Leadroot, following his divorce, had purchased back a period of his retirement contribution, which he had cashed in to use for work-related moving expenses during his marriage to Ms. Leadroot. *Id.* at 675. The original qualified domestic relations order in *Leadroot* included a fractional equation that used the months of marriage for the numerator and total months of service for the denominator. *Id.* at 676-77. The trial court in *Leadroot* thus edited the fraction to include the redeemed months for the denominator but did not add back the time to the numerator.

11

*Id.* The trial court intended for this decision to remedy a mutual mistake made by both parties. *Id.* at 680.

In reversing the trial court, this Court found the trial court's decision to be a significant modification and "engaged in more than simply illuminating the fraction at issue; it significantly altered that fraction so that it conformed with what the circuit court believed to be the parties' expectations." *Leadroot*, 147 Md. App. at 680. Furthermore, under Maryland Rule 2-535(b), a mistake involves a jurisdictional mistake such as "when a judgment has been entered in the absence of valid service of process[.]" *Peay v. Barnett*, 236 Md. App. 306, 322 (2018). The trial court in *Leadroot* was attempting to rectify a potential misunderstanding between the parties, both of whom were represented by counsel at the time the original judgment was entered. However, the mutual misunderstanding which occurred in *Leadroot* does not constitute the type of mistake that can be rectified through Maryland Rule 2-535(b). *Leadroot*, 147 Md. App. at 680-81.

We agree with Ms. Smith's analysis of *Leadroot* in the instant case and shall hold that under Md. Rule 2-535(a)-(b), the trial court was not permitted to modify the Smiths' CPO. Here, the trial court did not find that fraud, mistake, or irregularity as defined by Maryland Rule 2-535 had occurred. Cases of fraud, mistake, or irregularity must be proven by clear and convincing evidence. *Pelletier*, 213 Md. App. at 289-90; *Thacker*, 146 Md. App. at 217. "Irregularity, within the meaning of Rule 2-535(b) has been defined as 'the doing or not doing of that, in the conduct of a suit at law, which, comfortable to the practice of the court, ought or ought not to be done.'" *Autobahn Motors, Inc. v. Mayor and City Council*, 321 Md. 558, 562 (1991) (quoting *Weitz v. MacKenzie*, 273 Md. 628, 631

12

(1975)). *See also Davis*, 187 Md. App. at 125 (describing irregularity as a "nonconformity of 'process or procedure'"). Fraud under Maryland Rule 2-535(b) must be an extrinsic action which prevents a "fair submission of the controversy" to the court. *Jones v. Rosenberg*, 178 Md. App. 54, 72-73 (2008). While the trial court modified the formula award to make the retired pay award comparable with the military points system, the trial court failed to find any fraud, mistake, or irregularity, and therefore, modification is barred by the finality of the 1999 judgment of divorce and CPO.

Both Mr. and Ms. Smith were represented by counsel in 1999, and the parties agreed to the unit of months as numerator and the unit of measurement. Similar to *Leadroot*, the numerator and unit of measurement as written in the Smiths' CPO may lead to a windfall in Ms. Smith's favor; however, "[this] windfall is the product of a formula freely negotiated and agreed to by the parties." *Leadroot*, 147 Md. App. at 682.

This Court has emphasized that "Maryland is among a group of seven states taking the most restrictive position on when a party may by motion reopen a final judgment, even for the most compelling and equitable of reasons." *Miles v. State*, 141 Md. App. 381, 407 (2001). We will note that legal treatises, written and circulated in the 1990s at the same time when Mr. and Ms. Smith were divorced, instructed attorneys to use the points system when calculating retirement pay:

> Practitioners therefore must be careful in all reservist cases. Counsel should be wary – in the case involving reserve component service – of any calculations that presuppose the typical "years of marriage divided by years of service" formula. Because point accumulation might have been intermittent, significantly different spousal percentages could be obtained by the two methods of figuring.

13

MARSHAL S. WILLICK, MILITARY RETIREMENT BENEFITS IN DIVORCE: A LAWYER'S GUIDE TO VALUATION AND DISTRIBUTION 43-45 (ABA Section on Family Law) (1998).

Mr. Smith argues that the language of the 1999 CPO provides such authority to the trial court to modify the order's provisions under certain circumstances as specified in section nine:

> This Order is a final judgment. This Court retains jurisdiction to modify the provisions of this Order for purposes of its acceptance by the United States as a Constituted Pension Order (or other Order acceptable to the United States) under the Uniformed Services Former Spouses' Protection Act.

We agree that the trial court may have the authority to modify the CPO even after such a long delay in time for acceptance of the order by the plan administrator. But that is not the case here. The CPO did not need to be modified in order to comply with any DFAS requirements for distribution of the spousal share of retired pay. In fact, because Ms. Smith was deemed ineligible to receive direct payments from DFAS due to the short length of their marriage, there was no role for DFAS in the distribution process and therefore no need for DFAS acceptance under the Act.

While Ms. Smith is still entitled to her retired pay award under the USFSPA, the responsibility for the determination of her retired pay award returned to the Maryland court system and is thus governed by Maryland Rules. Provided that the modification by the trial court occurred more than twenty years following the entry of the CPO, Maryland Rule 2-535(b) was the only viable route for a trial court to modify the order. Absent evidence supporting a finding of fraud, mistake, or irregularity, the trial court erred in modifying the 1999 CPO.

14

*C. The Correct Calculation of the Spousal Share of Retired Pay*

The issue before the trial court was a motion by Ms. Smith to enforce the judgment issued by the court in 1999 and specifically for Mr. Smith to pay to Ms. Smith the retired pay award as provided for in the 1999 CPO. We next turn to determining what the proper calculation should be for the spousal share of retired pay under the 1999 CPO and the facts of this case. First, however, it is helpful to review the federal framework for military retired pay as governed by federal statutory law and the regulations promulgated by the DoD. The Uniformed Services Former Spouses' Protection Act is the federal statute governing the payment of military retired pay to servicemembers' former spouses.

The USFSPA was passed in 1982 in response to the U.S. Supreme Court decision in *McCarty v. McCarty*, 453 U.S. 210, 232-33 (1981), which prohibited military retired pay from being treated as community property in state divorce proceedings. *See Mansell v. Mansell*, 490 U.S. 581, 587-88 (1989); *Hurt v. Jones-Hurt*, 233 Md. App. 610, 619-20 (2017).

The twofold purpose of the USFSPA is to authorize states to distribute military retired pay to spouses and former spouses and to provide a mechanism for the DoD to enforce these payment orders. Under the regulations, disposable retired pay is a federal entitlement that is defined under 10 U.S.C. § 1408(a)(4) as "the total monthly retired pay to which a member is entitled less [certain] amounts."

The legislative history of the USFSPA includes a description of the legislative intent of the act:

> The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution.

S. REP. NO. 97-502, at 1611, July 22, 1982; *Fulgium v. Fulgium*, 240 Md. App. 269, 279-80 (2019).

The proper calculation of the military retired pay, including the unit and method of calculation, is detailed in the financial management regulations and is briefly summarized below. We note here, however, that legislation passed in 2017 adjusted this framework and, while not relevant to this case, these changes will affect cases allocating retired pay awards for the former spouses of servicemembers whose divorces occurred after December 23, 2016.[9]

To calculate military retired pay, a member of the military in active service earns one point for each day of active service, while a reservist earns a point for every day certain activities are conducted. *See generally* Department of Defense, DoD 7000.14-R, Financial

---

[9] The purpose of the USFSPA was to ensure that spouses and former spouses were justly compensated for their sacrifices as well. The 2017 provisions introduced a new method of calculating retired pay awards. The National Defense Authorization Act ("NDAA") for Fiscal Year 2017 amended the calculation method of retired pay, and while this calculation is not to be retroactively applied to divorces predating December 23, 2016, this amendment will certainly affect future cases regarding military retired pay. The new method of determining a retired pay award is to divide the amount equal to the creditable service during marriage by the date of divorce and not the date of retirement. *Fulgium v. Fulgium*, 240 Md. App. 269, 281 (2019). The intent of the amendment was to prevent overcompensation to former spouses especially for achievements earned by their former spouse following separation. *Id.*

Management Regulation [hereinafter DoD FMR, Vol. 7B, Ch. 3], Vol. 7B., Ch. 3 (Sept. 2022). Under 10 U.S.C. § 12732(a)(2), reservists are required to accrue a minimum of fifty points in a calendar year to qualify toward retirement. Active duty servicemembers can receive their retired pay after twenty years of active service. 10 U.S.C. § 12731(a)(2). Reservists are eligible to receive their retired pay at the age of sixty if they have twenty years or more of service.[10]

To calculate formula awards for spousal share, the DoD uses either of two units, i.e., months or points, depending upon active duty or reserve status. For active duty servicemembers, "[t]he numerator is the number of months the parties were married while member was performing creditable military service, and the denominator is the number of months of the member's total creditable military service." DoD FMR, 2.11.1. Vol. 7B., Ch. 29. However, for reserve servicemembers, the formula award is calculated using points such that "[t]he numerator is the number of Reserve retirement points earned during the parties' marriage, and the denominator is the member's total number of Reserve Retirement Points." *Id.* at 2.11.2, 6.7.3. If the retired pay is subject to a 50/50 split, the fraction is multiplied by .5 to determine the spousal share.

Many members of the United States military serve on both active duty and as a reservist during their career. When there is a transition of service, it is critical to account for the change in how each form of the member's service is credited toward their retirement. One legal commentator has observed that:

---

[10] The Department of Defense, *Reserve Retirement*, Military Compensation, https://militarypay.defense.gov/Pay/Retirement/Reserve.

> Use of a simple years of service computation rather than recognition of the point system will, in some situations lead to inequitable conclusions. The greatest potential for distortion of the marital share of the benefit occurs in situations where the member of the military retirement system switches from regular component to reserve component service.

*In re Marriage of Beckman*, 800 P. 2d 1376, 1379-80 (Colo. App. 1990) (citing W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non–ERISA, Retirement Systems for Marriage Dissolution Actions," 3 J.P. McCahey, ed., *Valuation & Distribution of Marital Property* § 46.34(1) (1990)). Therefore, when the military retirement benefit is a result of the combination of active and reserve component service, points are the proper method for calculating the fraction. W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non–ERISA, Retirement Systems for Marriage Dissolution Actions," 3 J.P. McCahey, ed., *Valuation & Distribution of Marital Property* § 46.34(2)(d) (1990).

Relevant to this case, it is important to note that points are used in two separate and distinct calculations for creditable service[11] under the DFAS regulations. The Department

---

[11] Under the DFAS regulations, there are actually three categories for determining creditable service. The third category, which is not relevant to the issues before the trial court, determines the "Years of Service for Retired Pay Percentage Multiple" for computing a retired pay multiplier. "The years of service for computing retired pay for Regular retirement are generally the total of years of active service. For non-Regular (Reserve/Guard) members, the years of service are the total of accumulated drill points combined with one point each day of active duty divided by 360." DoD FMR, 2.3-2.3.2, Vol. 7B, Ch.1. Depending on the applicable retirement system, a retired pay multiplier can be computed by different methods. According to DoD FMR 2.18, "[t]he standard retired pay multiplier used to compute retired pay for members with a Date of Initial Entry into Military Service (DIEMS) prior to January 1, 2018, who have not elected to participate in the Blended Retirement System (BRS) is 2.5 percent times the member's years of creditable service . . . The retired pay or retainer pay multiplier for a member with a DIEMS on or after January 1, 2018, or a member with a DIEMS before January 1, 2018, who elected to enroll in the BRS, is 2 percent times the years of creditable service." Vol. 7B, Ch. 29.

of Defense explains this distinction in a website[12] that provides descriptive titles to explain creditable service:

1.  Years of Service for Retirement Entitlement:  A reservist is entitled to credit one year of service towards retirement only if they have accrued a minimum of fifty points in that calendar year.  This calculation is done on a year-by-year basis to determine years of creditable service.  10 U.S.C. § 12731(a).

2.  Years of Service for Retired Pay Base:  The calculation of the amount of retired pay is determined by the appropriate pay table using final rank pay grade and equivalent years of service using the number of points accumulated by the reservist during their entire military career.  The number of points is divided by 360 days per year to determine the years of service for the pay base.  10 U.S.C. §§ 12732-12733.

From this review of military retired pay and the points system, we would agree with Mr. Smith that points would be the method used in the *Bangs* formula if this case were on direct appeal from a judgment of absolute divorce.  In other words, if the trial court had decided in 1999 the merits of the marital property distribution, including the division of Mr. Smith's military retirement pay, on a timely appeal, we would agree with Mr. Smith that points are the proper unit of measurement for the *Bangs* formula.  Maryland courts have held that when a reservist earns credit towards their retirement by function of activity

---

[12]  The Department of Defense, *Reserve Retirement*, Military Compensation, https://militarypay.defense.gov/Pay/Retirement/Reserve.

19

instead of simply length of service, then points should be used in the calculation of their retired pay. In *Woodson v. Saldana*, 165 Md. App. 480 (2005), this Court summarized caselaw across the nation, highlighting the use of the points method when determining the retired pay award for servicemembers with reserve component service:

> Other courts and commentators that have specifically considered this question have concluded that the marital portion of such benefits must be based on retirement points. *See, e.g.*, *Faulkner v. Goldfuss*, 46 P.3d 993, 1003 (Alaska 2002) ("where the value of retirement benefits is not directly related to the length of employment—such as when retirement benefits will be determined by the number of points earned as a result of the nature and frequency of the service rendered—the coverture fraction should be modified so that the numerator becomes the number of points earned during the period of coverture, and the denominator becomes the total number of points earned"); *Bloomer v. Bloomer*, 927 S.W.2d 118, 121 (Tex.Ct.App.1996) ("trial court should have characterized [reservist's] military retirement benefits by comparing his points accrued while married to the total accrued points")[.]

*Id.* at 490. However, this case is not a direct appeal, and our task now is to determine the proper calculation using the 113 months as the numerator in the *Bangs* formula as required under the 1999 CPO.

As described above, Ms. Smith asserts that 192.48 months should be the denominator. She arrives at that figure by using a conversion formula obtained from DFAS as part of her FOIA request that converts the 5,774 points into equivalent years of service. That formula is 5,774 divided by 360 which equals 16.04 years of service; then multiplied by 12 to arrive at the equivalent months of 192.48 for the *Bangs* formula.

The error in this calculation is that Ms. Smith is using the wrong method for calculating Mr. Smith's years of creditable service. The formula proposed by Ms. Smith is used by DFAS to calculate the equivalent years of service for the retired pay base, i.e.,

20

the second category of creditable service described above. This Court in *Heger v. Heger*, 184 Md. App. 83, 106-07 (2009), issued a warning and instructed for a cautionary application of the *Bangs* formula. In the original case, *Bangs v. Bangs*, "the value of the numerator was not in issue … and no depth of analysis was called for[,]" which is often not the case. *Heger*, 184 Md. App. at 108. Judge Charles E. Moylan, Jr., called attention to critical elements implicit in the numerator of the *Bangs* formula:

> The additional meaning that is incontrovertibly implicit in the numerator, as *Bangs* is applied to this case, is "working years and months of marriage" or "Years and months of marriage in which the pension continues to accrue and grow."
> . . .
> In this case, the units in the denominator were unquestionably the working months in which the pension accrued. The only question for the numerator then was that of how many of those working months were marital. Nothing else would yield a meaningful fraction or percentage. The unit expressed in the denominator is necessarily implicit in the numerator. It is axiomatic that a numerator is meaningless except in relation to its denominator.

*Id.* at 108-09 (emphasis removed).

*Heger* sets out another basic foundational principle of the *Bangs* formula that "[b]oth the numerator and the denominator, moreover, must compute similar units of measurement, lest the so-called fraction be meaningless gibberish." *Id.* at 108-09. The unit and method of measurement in the formula award must be the same for both the numerator and the denominator.

The trial court was correct in focusing on the language from the CPO relating to creditable service: "the denominator of [the formula award] is the total number of months of the member's creditable service for retirement purposes." The numerator as specified

21

in the CPO is 113 months, which represents the months in the calendar year during the marriage where Mr. Smith accrued at least fifty points earned for retirement eligibility, i.e., the first category of creditable service described above. Mr. Smith served in the Reserves their entire marriage, and 113 months is the total number of months that Mr. and Ms. Smith were married. The similar unit of measurement for the denominator is 468 months (thirty-nine years), which represents the months in the calendar year where Mr. Smith served on active duty or, as a reservist, accrued at least fifty points earned for retirement eligibility. In other words, 468 months are the total number of months that Mr. Smith served in the military during which his military retired pay award continued to accrue and grow.

Therefore, because the numerator of 113 months from the 1999 CPO cannot be modified, the similar unit of measurement to match the numerator for the *Bangs* formula is 439 months as the denominator. The calculation is 113 months divided by 439 months; times .05 which equals 12.87 percent. This calculation honors the agreement made between the parties in 1999 and adheres both to the units of measurement under the DFAS regulations and the finality of the 1999 judgment.

### D. Determining the Payment Mechanism for the Former Spouse

Under the federal regulations, there is a limitation on direct payments from DFAS to a former spouse that is triggered in this case. This limit on the direct payment provisions under 10 U.S.C. § 1408(d)(2) states:

> If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay, payments may not be made under this section to the extent that they include an amount resulting

22

from the treatment by the court under subsection (c) of disposable retired pay of the member as property of the member or property of the member and his spouse.

In this case, the divorce judgment was entered after nine years and five months of marriage.[13] When DFAS does not have jurisdiction to distribute the retired pay to the former spouse, "[a] state court has discretion whether to divide the disposable retired pay, and if so, how, in accordance with state law." *Fulgium*, 240 Md. App. at 284.

The Smiths' 1999 CPO anticipated such a scenario wherein the plan administrator lacked jurisdiction to make direct payments. These provisions at section seven of the CPO state:

> The Member shall not merge his retired or retainer pay with any other pension nor waive any portion of his retired or retainer pay in order to receive disability pay. Further, the Member shall not pursue any course of action which would defeat, reduce, or limit the Former Spouse's right to receive her share of the Member's retired or retainer pay as ordered herein. If, for any reason, any payments contemplated by this Order, including applicable cost of living increases, are not made directly by the Service to the Former Spouse, the Member shall instruct the Service to pay the shortfall by allotment payment to the Former Spouse. *If, for any reason, any payments contemplated by this Order, including applicable cost of living increases, are not made directly by the Service to the Former Spouse or by allotment, the Member shall pay the shortfall to the Former Spouse, with said payments to be made by the seventh (7th) day after the date the Member is paid the amount the Former Spouse should have received as determined under the terms of this Order.* The Service shall have no liability for any action by the Member in contravention of the provisions of this Paragraph.

---

[13] One of the disadvantages of the federal 10/10 rule is that typically a plan administrator would directly withhold taxes and issue end-of-year statements for tax purposes to the former spouse. Here, by failing to reach the ten-year threshold, Mr. Smith will serve as a pass-through of the funds with tax consequences upon himself for the spousal share. The parties will need to work out a resolution to this problem regarding the taxation of the retirement benefit.

(Emphasis added.)

This issue has arisen in other Maryland cases concerning the distribution of military retired pay. In *Dziamko v. Chuaj*, 193 Md. App. 98, 119-20 (2010), the duration of the marriage was seven years, thus not satisfying the 10/10 rule. On remand, this Court instructed the trial court to include an alternative method of payment other than direct payment from DFAS. *Id.* at 120. While the wife proposed to the court that her former husband should instruct DFAS to send payments straight to her, "direct payment of his military pension is not possible under federal law and, accordingly, cannot be part of the order entered by the circuit court." *Id.* A trial court cannot order DFAS to directly distribute payments to marriages that are not in compliance with the provisions of the USFSPA, nor can the 10/10 rule be waived by the servicemember. *Id.*

When the direct payment mechanism is not activated, state courts have the discretion to provide direction through a court order as to how the former spouse's share of the retired pay should be distributed. For example, in *Fischbach v. Fischbach*, 187 Md. App. 61, 72 (2009), Ms. Fischbach's estate received an initial lump sum payment for the missed pension payments accumulated prior to trial and then subsequent monthly payments from Mr. Fischbach's pension. *Id.* at 71-72.

At the trial court hearing, Mr. Smith asserted that he provided Ms. Smith with a $10,000 lump sum payment. On remand, the trial court shall calculate any retired pay arrearages due to Ms. Smith, offset by the lump sum payment made by Mr. Smith. The trial court shall also order a payment schedule in conformity with the above terms of the

24

CPO, which requires Mr. Smith to pay Ms. Smith within seven days of receipt of his monthly retired pay allotments.

## IV. CONCLUSION

To summarize, we find the trial court erred in modifying the 1999 CPO because it was a final judgment subject to modification only under Maryland Rule 2-535(b). Because the trial court failed to find any fraud, mistake, or irregularity, the 1999 CPO is a final judgment. Therefore, in calculating the spousal share of the retired pay award, the numerator of the *Bangs* formula shall be 113 months. The similar unit of measurement for the denominator is the total number of months that Mr. Smith served in the military being the time factor in which his military retired pay award continued to accrue and grow. Based upon the findings of the trial court at the June 9, 2023, hearing, that figure is 439 months. On remand, the trial court shall calculate any retired pay arrearages due to Ms. Smith, offset by the lump sum payment made by Mr. Smith. The trial court shall also order a payment schedule in conformity with the terms of the 1999 CPO.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

25